**IMG-007**                                                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2447
_____

LIGIA MERCEDES MUNZON, a/k/a Lykia
Mercedes Moonson;
LUIS DANILO SANCHEZ,
                                        Petitioners
v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A099-591-978 & A087-464-894)
Immigration Judge:  Honorable Eugene Pugliese
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 23, 2011

Before:  FISHER, WEIS AND BARRY, <u>Circuit</u> <u>Judges</u>

(Opinion filed: November 23, 2011)
_____

OPINION
_____

PER CURIAM.

Ligia Mercedes Munzon and Luis Danilo Sanchez petition for review of the

Board of Immigration Appeals' ("BIA") final order of removal.  We will deny the

petition.

Munzon and Sanchez are citizens of Ecuador. They are not married, but they have three children together and are raising a fourth, who is Munzon's from a previous relationship. All four children are United States citizens. The Government charged Munzon as removable for having entered without valid documents, see 8 U.S.C. § 1227(a)(1)(A), and charged Sanchez as removable for being present without inspection, see 8 U.S.C. § 1182(a)(6)(A)(i). Petitioners concede the charges but applied for cancellation of removal. Eligibility for that discretionary relief required them to show, inter alia, that their removal "would result in exceptional and extremely unusual hardship" to their children. 8 U.S.C. § 1229b(b)(1)(D).

Petitioners submitted documentary evidence and, along with two of their children, testified before the Immigration Judge ("IJ"). Petitioners claimed that their children would accompany them to Ecuador and would suffer hardship there because two of the children have vision problems, one had an allergic reaction to the water in Ecuador, and another has a skin condition. They further claimed that they might not be able to find employment in Ecuador and that their children would be deprived of educational opportunities available in the United States. The IJ denied their application on May 5, 2011. He considered the factors set forth in In re Monreal-Aguinaga, 23 I. & N. Dec. 56 (BIA 2001), and concluded that, although petitioners' children undoubtedly will suffer some regrettable hardship if moved to Ecuador, that hardship will not be

2

"exceptional and extremely unusual."

Two days after that decision, petitioners filed a motion for reconsideration with the IJ requesting a "continuance" to present the testimony of a licensed clinical social worker named Priska Imberti. Petitioners asserted that Imberti had been "ready and able to testify, but was not called upon due to a breakdown in communications" between her and counsel. (A.R. 36.) Petitioners also noted that they had filed Imberti's expert report of record and that the report addressed the children's psychological and emotional states. The IJ denied the motion on May 26, 2010, on the ground that "counsel has identified no error of law or fact in this court's previous decision." (A.R. 32.)

In the meantime, petitioners had appealed to the BIA, which dismissed their appeal on May 5, 2011. The BIA perceived no error in the IJ's assessment of hardship. It also denied relief on petitioners' argument that the IJ overlooked Imberti's report. The BIA reviewed the report itself and concluded that it did not contain evidence indicating that petitioners' children face the requisite hardship. Finally, it rejected their request to remand the matter for the taking of Imberti's testimony. They now petition for review.[1]

## II.

As petitioners acknowledge, our jurisdiction to review the denial of cancellation of removal is limited. We lack jurisdiction to review discretionary decisions,

---

[1] We have jurisdiction to review final orders of removal pursuant to 8 U.S.C. § 1252(a)(1). "When the BIA issues a separate opinion . . . we review the BIA's disposition and look to the IJ's ruling only insofar as the BIA defers to it." Huang v. Att'y Gen., 620 F.3d 372, 379 (3d Cir. 2010).

including the Agency's determination under 8 U.S.C. § 1229b(b)(1)(D) that petitioners did not show sufficient hardship. See 8 U.S.C. § 1252(a)(2)(B)(i); Patel v. Att'y Gen., 619 F.3d 230, 232 (3d Cir. 2010). We retain jurisdiction to review colorable constitutional claims or questions of law. See 8 U.S.C. § 1252(a)(2)(D); Patel, 619 F.3d at 232. We do so de novo. See Duhaney v. Att'y Gen., 621 F.3d 340, 345 (3d Cir. 2010). We conclude that petitioners' brief raises arguments that we have jurisdiction to review, though we reject them on the merits.

Petitioners' issue on appeal, broadly phrased, is that the IJ and BIA wrongfully denied them the opportunity to present Imberti's testimony. That issue has three components. First, petitioners argue that the IJ and BIA erred in denying a "continuance" to present Imberti's testimony because her absence was caused in part by the Immigration Court's own scheduling error.[2] Petitioners have not framed this argument in terms of due process, which we would retain jurisdiction to review, but it raises due process concerns. Even if we construe it to assert a due process claim, however, it lacks merit because petitioners have not shown that the IJ and BIA denied them a "'reasonable opportunity to present evidence'" or that they suffered "'substantial prejudice'" as a result. See Jarbough v. Att'y Gen., 483 F.3d 184, 192 (3d Cir. 2007) (citations omitted).

---

[2] Petitioners first requested a "continuance" in their motion for reconsideration before the IJ. They did not appeal the IJ's denial of that motion to the BIA or file a motion to remand with the BIA. The BIA nevertheless addressed the underlying issue on the merits, so it is exhausted. See Lin v. Att'y Gen., 543 F.3d 114, 123-25 (3d Cir. 2008).

The following background is relevant to this claim. Petitioners' merits hearing was scheduled for May 5, 2010. According to petitioners' motion for reconsideration, the Immigration Court Clerk called counsel's office to reschedule on April 26, 2010.[3] After speaking with counsel's assistant, the Clerk rescheduled the hearing for May 17. Two or three days later, however, the Clerk called counsel's office again, informed them that the rescheduling had been in error, and told them that the hearing would proceed on May 5 as originally scheduled.

The hearing in fact proceeded on that day. The IJ began the proceeding by apologizing for the scheduling confusion and asking petitioner's counsel "Are we ready, Ms. First?," to which she replied "Yes, Your Honor." (A.R. 79-80.) Counsel proceeded to examine both petitioners and the IJ asked her whether she had more witnesses. (Id. at 110-11.) She responded that she wanted to call two of the children and some "good moral character witnesses." (Id. at 111.) After counsel examined the two children, the Government's counsel agreed that good moral character was not at issue and the IJ stated: "Then we don't have any more witnesses then, we're done." (Id. at 123.) Petitioners' counsel never mentioned Imberti or any other potential witnesses, and she did not elicit testimony about any psychological or emotional issues.

Petitioners argued before the BIA that these circumstances required a remand for the taking of Imberti's testimony. The BIA disagreed for three reasons. First,

---

[3] Petitioners' motion actually states the date as May 26, 2010, but, from the context, it is apparent that the date could only have been April 26. (A.R. 36 ¶ 7.)

it noted petitioners' acknowledgment that Imberti's absence was caused by a "breakdown of communications" between her and counsel. (BIA Dec. at 3) (A.R. 5). Second, it noted that petitioners had not requested a continuance to present Imberti's testimony during the hearing. (Id.) Finally, it noted that petitioners never attempted to develop a record regarding psychological or emotional issues. (Id.)

Petitioners now argue that the BIA should not have blamed Imberti's appearance on counsel because "[t]he failure to communicate was due in large measure to the Court creating confusion." (Pet'rs Br. at 12.) Petitioners' own motion to reopen, however, belies that argument. Petitioners acknowledge that they had at least five days notice that the hearing would proceed on May 5. They further acknowledge that, "when the date was changed back, Ms. Imberti was only able to tell us in the last day or so that she was available for May 5, 2010, and Ms. First [counsel who handled the hearing], unfortunately, was not aware of Ms. Imberti's availability on May 5, 2010." (A.R. 36 ¶ 10.) Petitioners do not say why, but they have raised nothing suggesting that such unawareness was the fault of the Immigration Court. Petitioners also have not acknowledged the BIA's remaining rationales, which are supported by the record. Thus, petitioners were not deprived of a reasonable opportunity to present evidence. They also have not shown prejudice. Petitioners made no proffer to the IJ or BIA of Imberti's testimony, and have made none on review.

Second, petitioners argue that the BIA should have remanded because the IJ

6

did not address Imberti's report and the BIA's assessment of that report in the first instance constituted improper fact-finding. See 8 C.F.R. § 1003.1(d)(3). We have jurisdiction to review that legal issue. See Padmore v. Holder, 609 F.3d 62, 66-67 (2d Cir. 2010). Petitioners argued to the BIA that the IJ failed to consider Imberti's report, which he had not mentioned. The BIA reviewed the report itself, summarized its contents, and concluded that "we find no evidence in this report that indicates that the emotional or psychological issues the respondents' children face are substantially beyond what would ordinarily be expected as a result of accompanying their parents to a new country." (BIA Dec. at 2) (A.R. 4).

In doing so, the BIA did not find any facts, such as the likelihood that petitioners' children will or will not face any particular hardship. See Kaplun v. Att'y Gen., 602 F.3d 260, 271 (3d Cir. 2010). Instead, it appears to have accepted everything in the report as true and reviewed it to determine whether the potential hardships described therein satisfy the legal standard of "exceptional and extremely unusual hardship" under 8 U.S.C. § 1229b(b)(1)(D). This legal assessment did not constitute improper fact-finding. See Kaplun, 602 F.3d at 271. Petitioners have not challenged the substance of the BIA's assessment, and we would lack jurisdiction to review it even if they had.[4]

---

[4] We nevertheless note our agreement with the BIA that the report describes only psychological and emotional hardships likely to be faced by any child taken to a foreign country and nothing suggesting that these hardships would be "exceptional and extremely

7

Finally, petitioners suggest that the denial of a "continuance" under these circumstances is inconsistent with our ruling in Hashmi v. Attorney General, 531 F.3d 256 (3d Cir. 2008). In that case, however, the IJ denied a request for a continuance solely out of case-completion concerns before proceedings had concluded and without considering the particular circumstances of the case. See id. at 261. Hashmi bears no resemblance to the situation presented here, in which petitioners requested a "continuance" only after their proceeding had concluded and in which the BIA addressed the particular circumstances of the case in denying their request for a remand. The BIA did not commit any constitutional or legal error in doing so.

For these reasons, we will deny the petition for review.

---

unusual." (A.R. 481-88.) The BIA's ruling also makes clear that, assuming Imberti's testimony would have been consistent with her report, petitioners were not prejudiced by her absence.