NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1842
_____

LAKHWINDER SINGH,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                        Respondent
_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A204-245-570)
Immigration Judge: Daniel A. Morris
_____

Submitted Under Third Circuit LAR 34.1(a)
January 22, 2019

Before:   JORDAN, KRAUSE, and ROTH, *Circuit Judges*

(Filed June 4, 2019)
_____

OPINION[*]
_____

_____

    [*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Lakhwinder Singh petitions for review of a decision of the Board of Immigration Appeals ("BIA") dismissing his appeal from the denial of his application for withholding of removal and protection under the Convention Against Torture ("CAT"). We will deny the petition in part and dismiss it in part.

## I.    BACKGROUND

Singh is a native and citizen of India. In 2004, when he was nine years old, he entered the United States as a B-2 visitor with his family.[1] He was later granted Temporary Protected Status under the Deferred Action for Childhood Arrivals ("DACA") program.

In December 2016, he pled guilty to conspiracy to manufacture or distribute a controlled dangerous substance—in his case, less than an ounce of marijuana—in violation of N.J. Stat. Ann. §§ 2C:5-2A(1), 2C:35-5A(1), and was sentenced to two years' probation. Later that month, his DACA status expired.

Some five months later, Singh was taken into custody during an immigration enforcement surge, and the Department of Homeland Security ("DHS") commenced removal proceedings against him. He was served with a Notice to Appear ("NTA") charging him with being removable as an "overstay," under section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B), and for violating a

---

[1] A B-2 visa is a nonimmigrant visa for foreign citizens seeking to enter the United States for tourism. *Visitor Visa*, U.S. Dep't of State, https://travel.state.gov/content/travel/en/us-visas/tourism-visit/visitor.html (last visited Dec. 12, 2018).

law relating to a controlled substance, under section 237(a)(2)(B)(i) of the INA,

8 U.S.C. § 1227(a)(2)(B)(i).[2] Singh admitted his prior conviction and conceded

removability but then applied for withholding of removal and protection under the CAT.[3]

In his application, Singh, who is a Sikh, alleged a fear of future persecution based

on his religion; his political opinion, namely, support of the creation of a separate Sikh

state in India called Khalistan; the imputed political opinion of his uncles, vocal pro-

Khalistan advocates who had been tortured by the Indian police for that advocacy; and

Singh's membership in a particular social group consisting of "a Khalistani family who

has advocated for the creation of a separate Sikh homeland[.]"  (AR at 403.) To support

his application, Singh submitted a personal declaration and evidence about conditions in

India.

An Immigration Judge ("IJ") held a hearing on Singh's application.  Singh and his

uncle, Daljit Singh, testified at the hearing about the danger Singh faced if returned to

India.  After the hearing, the IJ denied the application, despite having found Singh

credible.  The IJ determined that Singh was ineligible for withholding of removal because

he had been convicted of a "particularly serious crime."  The IJ further concluded that,

even if Singh were eligible for withholding of removal, he had failed to establish his

---

[2] The NTA also charged Singh with being removable for his aggravated felony conviction, under section 237(a)(2)(A)(iii) of the INA, 8 U.S.C. § 1227(a)(2)(A)(iii), but the government later withdrew that charge.

[3] Singh also initially sought asylum, but he conceded he was time-barred from receiving that relief.

entitlement to that relief. Singh was also ineligible for relief under the CAT because, according to the IJ, he had not demonstrated that it was more likely than not that he would suffer torture if he were removed to India.

Singh appealed to the BIA. In addition to seeking review of the IJ's ruling, he submitted country conditions evidence, some of which he had already submitted to the IJ, and he asked the BIA to remand the case for the IJ to consider that evidence. The BIA dismissed his appeal and denied his request to remand. Like the IJ, the BIA concluded that Singh had not established eligibility for either withholding of removal or CAT protection. Starting with withholding of removal, the BIA declined to reach the issue of whether Singh had committed a "particularly serious crime." Instead, it affirmed on the basis of the IJ's "alternative conclusion" that Singh had failed to "carry his burden of proof to warrant a grant of withholding of removal." (Special App. at 4-5.)

The BIA then turned to the IJ's denial of relief under the CAT. It acknowledged Singh's evidence of "police opening fire on Sikh protestors, torture of Sikh prisoners, and arrests of Sikh activists on false terrorism grounds[,]" but it denied relief because "the [IJ's] findings of what may or may not happen in the future, including the risk of future torture, are not clearly erroneous." (Special App. at 7.) The IJ had determined that Singh could relocate within India and that, because Singh was not a political dissident, he was not likely to face police scrutiny.

4

Finally, the BIA considered Singh's request to remand.[4] It denied that motion, noting that two of the reports Singh provided had been part of the record below and that all of the reports had been available at the time of his hearing. It further held that the rest of the newly submitted evidence was insufficient to warrant remanding the case.

Singh timely petitioned for review.[5]

## II.    DISCUSSION

Singh argues that the BIA violated his due process rights, that he is entitled to withholding of removal, that he is entitled to relief under the CAT, and that the BIA abused its discretion and engaged in impermissible fact-finding in denying his motion to remand. To the extent we have jurisdiction to review Singh's contentions, we disagree.

### A.    Jurisdiction over Singh's Petition[6]

We are obliged to first satisfy ourselves of our own jurisdiction before analyzing the merits of a case. *Adorers of the Blood of Christ v. FERC*, 897 F.3d 187, 193 n.5 (3d Cir. 2018). Under 8 U.S.C. § 1252(a)(1), we generally have jurisdiction to review final orders of removal, but our jurisdiction is limited when, as in this instance, the noncitizen is removable due to a controlled substance offense. 8 U.S.C. § 1252(a)(2)(C).[7]

---

[4] The BIA construed Singh's submission of additional country conditions evidence to be, in effect, a motion to remand.

[5] Singh also twice sought a stay of removal, which we denied.

[6] The BIA had jurisdiction under 8 C.F.R. § 1003.1.

[7] Singh argues that § 1252(a)(2)(C) does not apply because the BIA did not base its decision on the IJ's "particularly serious crime" determination. But whether § 1252(a)(2)(C) applies is determined by the grounds for the noncitizen's removability,

5

Specifically, "we lack jurisdiction to review factual findings underlying a removal order against an alien who has committed a controlled substance offense." *Green v. Att'y Gen.*, 694 F.3d 503, 506 (3d Cir. 2012). Singh does not dispute, and never has, that he is removable for violating a law relating to a controlled substance.[8] Thus, we can review his petition only to the extent it raises colorable constitutional claims or other questions of law. 8 U.S.C. § 1252(a)(2)(D); *Mendez–Reyes v. Att'y Gen.*, 428 F.3d 187, 189 (3d Cir. 2005). We review constitutional and legal questions de novo. *Roye v. Att'y Gen.*, 693 F.3d 333, 339 (3d Cir. 2012). Where, as here, the BIA issues its own decision on the merits, we review the BIA's decision and consider the IJ's decision only insofar as the BIA relied on it. *Id.*

## B. Due Process

Singh argues that the BIA violated his due process rights by failing to address his contention that the IJ's "particularly serious crime" determination was incorrect. While we have jurisdiction to review that claim,[9] it lacks merit.

---

not the grounds on which the BIA rests its decision. *See* § 1252(a)(2)(C) ("[N]o court shall have jurisdiction to review any final order of removal against an *alien who is removable by reason of* having committed a criminal offense covered in section . . . 1227(a)(2)(A)(iii), (B) . . . of this title[.]" (emphasis added)). Singh concedes the grounds for removability in this case.

[8] Singh conceded all of the factual allegations contained in the NTA. His violation did not involve simple possession of marijuana, so jurisdiction is not restored under 8 U.S.C. § 1227(a)(2)(B)(i).

[9] The government contends that, because the BIA expressly declined to base its decision on the IJ's "particularly serious crime" determination, that finding is not properly before the Court. We have jurisdiction to review Singh's due process claim, however, because it raises a constitutional question. 8 U.S.C. § 1252(a)(2)(D); *Mendez–*

6

The Fifth Amendment right to due process guarantees to noncitizens in removal proceedings "three key protections: (1) factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) the opportunity to make arguments on his or her own behalf; and (3) an individualized determination of his interests." *Serrano-Alberto v. Att'y Gen.*, 859 F.3d 208, 213 (3d Cir. 2017) (alteration, internal quotation marks, and citation omitted). Singh contends he was deprived of the opportunity to make arguments on his own behalf. To demonstrate a due process violation on that basis, he must show both "that he was prevented from reasonably presenting his case[,] and … that substantial prejudice resulted." *Id.* (first alteration in original) (citation omitted). He has failed to do so.

According to Singh, the BIA's choice to decide his case on the merits, rather than on his eligibility for relief, prevented him from being able to reasonably present his case to us. He says there is substantial prejudice because the very fact that the BIA ignored his argument shows it "had the potential [to affect] the outcome." (Opening Br. at 12.) He is mistaken.

---

*Reyes*, 428 F.3d at 189. That is so even though Singh raises the claim for the first time in his petition for review. A noncitizen generally must exhaust all "administrative remedies available to him as of right" for jurisdiction to exist. *Sewak v. INS*, 900 F.2d 667, 670 (3d Cir. 1990) (citation omitted). There is, however, a limited exception to the exhaustion requirement for due process claims. *See Khan v. Att'y Gen.*, 448 F.3d 226, 236 n.8 (3d Cir. 2006) ("[E]xhaustion of administrative remedies is not always required when the petitioner advances a due process claim." (quoting *Sewak*, 900 F.2d at 670)). Because Singh does not claim a mere "procedural error[] correctable by the administrative tribunal[,]" *Bonhometre v. Gonzales*, 414 F.3d 442, 444 n.1 (3d Cir. 2005) (citation omitted), exhaustion is excused and we have jurisdiction.

The right to an opportunity to make arguments on one's own behalf "focuses on the fairness of the process itself." *Serrano-Alberto*, 859 F.3d at 213. Singh has not pointed to any unfairness in the process. The only thing he complains of is something that is wholly permissible: the agency disposed of his case on a ground not of his choosing. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule[,] courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach."). He has no right to dictate the basis that the BIA may choose for its ruling, and there is simply no support for the idea that he was prevented from presenting his case.

Nor has Singh demonstrated substantial prejudice. While he contends that the BIA's failure to address his argument shows the argument had the potential to change the outcome, the opposite is true. The BIA declined to reach the issue of Singh's eligibility for relief precisely because, given that it agreed with the IJ that Singh had failed to meet his burden of proof for withholding of removal and CAT relief, the eligibility issue could not have affected the outcome of his case. Accordingly, his due process claim fails.

C.    **Withholding of Removal**

Singh next challenges the agency's decision on his withholding of removal claim. He asserts that his testimony alone was sufficient to establish his entitlement to withholding of removal and that, even if corroboration was required, he satisfied his burden of proof through the testimony of his uncle and his country conditions evidence.

This is how the BIA ruled on the issue. First, it affirmed the IJ's conclusion that, while Singh had established that he is a Sikh, he had failed to establish a clear probability

8

that he would be subject to future persecution based on his religion. Next, it affirmed the ruling that Singh had failed to adequately corroborate that he actually holds his professed political opinion. Third, it agreed with the IJ that Singh had failed to show a reasonable fear of persecution based on the imputed political beliefs of his uncle. Finally, it affirmed that, while Singh is part of a family-based social group, he had failed to demonstrate a likelihood of persecution based on membership in that group.

We have reviewed the BIA's rulings and perceive no legal error. *Chen v. Gonzales*, 434 F.3d 212, 217 (3d Cir. 2005); *see also Chukwu v. Att'y Gen.,* 484 F.3d 185, 192 (3d Cir. 2007) ("It is reasonable to expect corroboration where the facts are central to the applicant's claim and easily subject to verification.").[10] Accordingly, we will deny Singh's petition as it relates to withholding of removal.

## D. Protection under the CAT

Singh also contends that he established his eligibility for protection under the CAT. To qualify for CAT relief, Singh "must show that 'it is more likely than not that he . . . would be tortured' if returned to" India, *Kaita v. Att'y Gen.*, 522 F.3d 288, 300 (3d Cir. 2008), and that the torture would occur "with the consent or acquiescence" of the government, 8 C.F.R. § 1208.18(a)(1). A CAT determination has two elements, one factual and one legal. *Kaplun v. Att'y Gen.,* 602 F.3d 260, 271 (3d Cir. 2010). The first,

---

[10] To the extent Singh challenges the BIA's conclusion that he failed to "me[e]t [his] burden of showing a well-founded fear of future persecution" on a particular basis (i.e., his religion, his political opinion, an imputed political opinion, or his membership in a particular social group), that "is a question of fact," which we cannot review. *Camara v. Att'y Gen.*, 580 F.3d 196, 201 (3d Cir. 2009); *Green*, 694 F.3d at 506.

9

"what is likely to happen to the petitioner if removed[,]" is a factual inquiry. *Id.* The second, whether "what is likely to happen amount[s]" to torture, is a legal inquiry. *Id.*

Because our jurisdiction here is limited to questions of law, we lack jurisdiction to review Singh's argument that the BIA erred in affirming the IJ's factual determination that Singh himself is not likely to face government supported or tolerated persecution, let alone torture, if returned to India. *Green*, 694 F.3d at 506; *Pieschacon-Villegas v. Att'y Gen.*, 671 F.3d 303, 308-10 (3d Cir. 2011) (applying 8 U.S.C. § 1252(a)(2)(C) to application for deferral of removal under the CAT). The IJ concluded that Singh would be able to relocate within India and that his evidence did not show that he, as a non-political activist family member of a pro-Khalistan advocate, was likely to suffer government-sanctioned mistreatment. Those are factual determinations that the BIA affirmed and we cannot review.

We also lack jurisdiction over Singh's contention that the BIA overlooked evidence in the record. Singh argues that the agency ignored evidence of country conditions in India showing that pro-Khalistan Sikh activists are persecuted. That could be construed as a claim of legal error. *Green*, 694 F.3d at 508. He does not, however, identify what "documents" the agency overlooked. (Opening Br. at 22.) Instead, he recounts his country conditions evidence, contending it is sufficient to establish his eligibility for CAT relief and "show[s] a different story" than the agency's finding that conditions in India have improved for Sikhs. (Opening Br. at 26.) His real argument, then, is not that the agency ignored relevant evidence, but that the IJ made incorrect factual determinations about the conditions in India and what Singh is likely to suffer if

10

returned to that country. *Green*, 694 F.3d at 508. As noted already, however, those are factual matters we cannot review. *Id.*; *see also Pieschacon-Villegas*, 671 F.3d at 309.

We have jurisdiction only to the extent Singh contends that the BIA misapplied the law governing CAT protection to the undisputed facts of the record. *Roye*, 693 F.3d at 339; *Toussaint v. Att'y Gen.*, 455 F.3d 409, 412 n.3 (3d Cir. 2006). In that regard, however, we perceive no error in the BIA's decision. While the BIA could have been clearer on the point, it is apparent from its reasoning that, because it accepted the IJ's factual finding that Singh would suffer little to no mistreatment if returned to India, it implicitly held that, as a matter of law, little to no mistreatment does not amount to torture. We will not disturb that conclusion.

### E. Motion to Remand

Finally, Singh argues that the BIA abused its discretion and engaged in impermissible fact-finding in denying his request to remand his case to the IJ. That argument presents, at least in part, a legal question that we have jurisdiction to review. *Padmore v. Holder*, 609 F.3d 62, 67 (2d Cir. 2010) (per curiam); *see also Pareja v. Att'y Gen.*, 615 F.3d 180, 188 (3d Cir. 2010) ("[W]here the BIA is alleged to have made a . . . determination based on . . . fact-finding which is flawed by an error of law, our jurisdiction to review that determination is secure." (internal quotation marks and citation omitted)). But Singh again misses the mark.

The BIA construed Singh's submission of additional evidence as a motion to remand. Such motions are treated in the same way as motions to reopen. *Huang v. Att'y Gen.*, 620 F.3d 372, 389 (3d Cir. 2010). The BIA may deny such motions if the movant

11

fails to submit material, previously unavailable evidence that is likely to change the result in the case. 8 C.F.R. § 1003.2(c)(1); *Huang*, 620 F.3d at 389-90. Making that determination was not impermissible fact-finding, as Singh contends, but rather a permissible adjudication of Singh's motion to remand. *Id.*; *see also* 8 C.F.R. § 1003.2(c)(1) (requiring the BIA, when considering a motion to reopen, to consider the facts in the first instance).

To the extent Singh challenges the BIA's decision as an abuse of discretion, we lack jurisdiction to consider his arguments. The BIA rested its decision, in part, on the fact that the majority of Singh's evidence was previously available. The availability of evidence is a factual question, which we cannot review. Furthermore, the only previously unavailable evidence, according to the BIA, was a news report about a Scottish Sikh who had been "abuse[d] . . . while in India for his wedding." (Special App. at 7.) The BIA held that that evidence was unlikely to change the outcome of Singh's case because the Scottish man had been a "pro-Sikh advoca[te,]" while Singh had failed to establish his claimed political opinion. (Special App. at 7.) Since that portion of the BIA's decision relies on Singh's failure to establish his professed political opinion, i.e., the sufficiency of his evidence, we lack jurisdiction to review it for the reasons already discussed.

III. **CONCLUSION**

For the foregoing reasons, we will deny in part and dismiss in part the petition for review.